IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| MICHELLE COLLETTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:08-CV-085 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. For the reasons set forth herein, defendant's motion for summary judgment [doc. 14] will be granted, and plaintiff's motion for summary judgment [doc. 10] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff applied for SSI in October 2005, claiming to be disabled as of September 1, 1998, by back pain, neck pain, shoulder pain, hand pain, headaches, depression, anxiety, an ovarian cyst, and "a problem with my left knee." [Tr. 64, 72]. The administrative record indicates that this is at least plaintiff's second application for SSI benefits. [Tr. 26-

41].[1]

The present claim was denied initially and on reconsideration. Plaintiff then requested a hearing, which took place on June 26, 2007, before the same ALJ who adjudicated her prior application.

On October 11, 2007, the ALJ issued a decision denying benefits. He determined that plaintiff suffers from the "severe" impairments of "back disorders and myalgias," but that those conditions do not, singularly or in concert, equal any of the Commissioner's listed impairments. [Tr. 19]. Plaintiff was found capable of performing the full range of light work. [Tr. 20-23]. Relying on vocational expert testimony, the ALJ concluded that plaintiff remains able to return to her past relevant employment. [Tr. 23]. She was thus ruled ineligible for SSI benefits.

Plaintiff then sought Appeals Council review. On January 10, 2008, review was denied, notwithstanding plaintiff's submission of four pages of additional medical records. [Tr. 5-6, 8, 343-46]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. § 416.1481. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g).

---

[1] Plaintiff's prior application was denied by an Administrative Law Judge ("ALJ") on April 26, 2005, without further appeal. [Tr. 26]. Plaintiff does not now contest the ALJ's conclusion in this case that, "While the regulations provide [for] reopening a previous decision under certain circumstances, in this case there is no basis for reopening the decision dated April 26, 2005. Accordingly, res judicata applies to the period on and prior to April 26, 2005." [Tr. 16]. It is also noted that the Commissioner's current briefing to this court incorrectly references a *res judicata* date of April 26, 2006, rather than the correct date of April 26, 2005. [Doc. 15, p. 1-2, 5, 12-13].

2

II.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g)*; Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id*.

4

III.

*Background and Testimony*

Plaintiff was born in 1967 and has a high school education. [Tr. 64, 77]. Her past relevant employment is as a cashier, telemarketer, insurance clerk, and housecleaner. [Tr. 99].

Plaintiff can drive and feed her pets. [Tr. 83-84]. She purportedly sleeps "a lot" due to depression and back pain, can perform only minimal housework, and has lost interest in eating and personal hygiene. [Tr. 91-94, 127-28].[2] Plaintiff claims to be in "constant pain," "crying all the time" and suffering daily panic attacks. [Tr. 97, 352]. She purports to be unable to afford prescribed medication [Tr. 183, 189] but consumes a pack of cigarettes [Tr. 276] and a six-pack of Diet Pepsi [Tr. 265] each day.

IV.

*Relevant Medical Evidence[3]*

In March 2005, plaintiff visited treating physician Peter Platzer. Other than gynecological and hemorrhoid complaints, plaintiff was described as "doing well." [Tr. 170]. She had full range of motion in her neck and full muscle strength in all extremities. [Tr. 171]. On April 11, 2005, plaintiff sought treatment for a hemorrhoid. [Tr. 168]. Although

---

[2] Plaintiff's statements regarding her attention to hygiene are in conflict with the observations of consulting psychologist Steve Lawhon, who twice described plaintiff's grooming and hygiene as "satisfactory." [Tr. 280, 334].

[3] Because of the preclusive effect of plaintiff's prior SSI claim, the court's factual recitation will focus on the time around and following the denial of the prior claim, April 26, 2005.

5

she offered additional subjective complaints [Tr. 168], examination was unremarkable but for the hemorrhoid. [Tr. 169].

On May 6, 2005, plaintiff presented to Dr. Platzer with complaints of anxiety and generalized pain. Dr. Platzer's notes indicate that "[d]isability was denied by the judge. She needs a letter. She is once again teary. She cries readily. She is very upset at being turned down for disability. She is very upset in general. She has continued pain." [Tr. 164]. Dr. Platzer's "assessment," however, was simply to describe plaintiff as a "[h]ealthy woman." [Tr. 165].

Plaintiff's next appointment, on June 17, 2005, was a follow-up visit regarding her complaints of depression. Dr. Platzer "spent 45 minutes talking about her husbands? [sic] dysfunctional family, her dysfunctional friends, and her problems. [Dr. Platzer] [a]dvised her to find a new circle of friends, get involved in the community." [Tr. 163].

The following month, plaintiff complained of deep pelvic pain following intercourse. [Tr. 160]. Dr. Robert Geer diagnosed a cystic lesion within the right ovary. [Tr. 158, 161]. Approximately one year later, Dr. Sean White performed a full hysterectomy and a bilateral salpingo-oophorectomy. [Tr. 328]. By October 31, 2006, Dr. White wrote that plaintiff was "doing well." [Tr. 315].

Dr. Platzer's records state that he discontinued plaintiff's Lortab [hydrocodone] prescription on February 14, 2005. [Tr. 157-173]. Curiously, his August 19, 2005 appointment notes reveal that plaintiff "comes in angry. Apparently, there has been some

6

dust up about her Lortab, which she tells me she flushed down the commode. She is distressed and over wrought." [Tr. 156]. Dr. Platzer allegedly "explained that there was nothing I could do about the Lortab; she would have to wait until next month." [Tr. 156].[4]

Plaintiff returned to Dr. Platzer in October 2005 with a probable emergency room diagnosis of mononucleosis. [Tr. 154]. The "objective" portion of Dr. Platzer's records describe plaintiff as, "Well developed . . . in no acute distress. . . . Patient is ambulatory with a steady gait and free of acute injury, patient is able to move all extremities with [full range of motion], and denies pain with movements. . . . Normal affect and demeanor, alert and oriented x3." [Tr. 155].

On November 21, 2005, plaintiff presented to Dr. Platzer with complaints of increased anxiety. [Tr. 152]. Dr. Platzer's objective notes state, in full, that plaintiff was "actually fairly well composed. Eye contact is good. Mood is positive. Affect appropriate." [Tr. 152]. Dr. Platzer nonetheless diagnosed, "Significant anxiety and depression." [Tr. 153].

At her next appointment on February 2, 2006, plaintiff reported "continued internal stresses at home" and was described as "less composed and somewhat disheveled

---

[4] On April 5, 2004, Dr. Platzer "told her I did not want her taking more than one Lortab per day. Perhaps two if she is in a lot of discomfort. . . . She did understand about the excessive use of narcotics." [Tr. 179]. On February 14, 2005, Dr. Platzer noted that "she is running out of Lortab. She is requiring it every 6 hours around the clock. I have concerns about the amount of [sic] she is taking." [Tr. 172]. Inexplicably, despite his purported concerns, Dr. Platzer had been providing plaintiff with hydrocodone prescriptions, in the quantity of at least four pills per day, since July 2002, apparently paid for by the State of Tennessee's managed healthcare program. [Tr. 189, 172-202]. Further, according to plaintiff's administrative hearing testimony [Tr. 353] and the records of Mac's Medicine Mart [Tr. 330-31], plaintiff continued to receive hydrocodone prescriptions from Dr. Platzer, in the quantity of four pills per day, through at least June 2007.

7

today." [Tr. 150]. Physical examination was unremarkable except for an injured finger. [Tr. 150].

Dr. Samuel Breeding performed a consultative examination in March 2006. Plaintiff was pleasant and sat comfortably during the exam. [Tr. 276]. Imaging showed "mild" lumbar scoliosis and prior internal fixation of the thoracic spine. [Tr. 279]. Dr. Breeding's other objective findings were minimal [Tr. 276-77] and his assessment [Tr. 277] largely mirrored plaintiff's subjective complaints [Tr. 274-76]. Dr. Breeding concluded,

> The patient can lift 15 pounds occasionally. She can sit for up to six hours in an eight-hour day. She can stand for two to four hours in an eight-hour day but should be allowed to sit or stand as needed for comfort. She should avoid repetitive bending.

[Tr. 277-78].

Clinical psychologist Steven Lawhon performed a mental status examination on March 3, 2006. Plaintiff appeared "mildly to moderately" anxious and depressed. [Tr. 281]. Dr. Lawhon predicted only "mild" limitation in the vocational activities of adaptation, sustaining concentration, and persistence. [Tr. 282-83].

Nonexamining Dr. James Millis completed a Physical RFC Assessment on March 17, 2006. He predicted that plaintiff could perform the full range of light exertion. [Tr. 299-305].

On April 3, 2006, Dr. Platzer described plaintiff's anxiety and depression as "stable." [Tr. 148]. She was well-groomed and "[o]verall doing well." [Tr. 148]. On May 2, 2006, plaintiff complained of back pain and depression. [Tr. 146]. Dr. Platzer wrote,

8

Case 2:08-cv-00085-RLJ-DHI   Document 16   Filed 01/06/09   Page 8 of 18   PageID #: 84

"Michelle actually looks good. She is much calmer. Eye contact was good. Mood was sad. Affect appropriate." [Tr. 146]. Dr. Platzer "seriously th[ought] she has a component of bipolar disorder." [Tr. 147].

An April 2006 MRI of the left shoulder showed a cystic lesion which had "diminished significantly in size compared with the previous examination" in June 2003. [Tr. 204]. Degenerative joint change causing minimal muscle encroachment was also noted. [Tr. 205].

Dr. Platzer's notes between January and April 2007 mention depression, bipolar disorder, muscle spasms, anxiety, and chronic back pain but are largely illegible. [Tr. 306-10]. On June 25, 2007, Dr. Platzer generated a "Medical Statement in the case of Michelle Collette date of birth January 9, 1967." He wrote,

> 1. Michelle has been a patient of mine since 2002.
>
> 2. She has many medical problems the most significant of which are as follows: bipolar disorder, anxiety, agoraphobia, obsessive-compulsive behavior disorder, chronic back pain due to severe scoliosis and the subsequent placement of a Harrington rod and irritable bowel syndrome.
>
> 3. She has chronic shoulder and periscapular pain do [sic] to a labral tear. She also has had a hysterectomy and oophorectomy for dysfunctional uterine bleeding and an ovarian mass.
>
> 4. In the five years in which Michelle has been my patient, she has been on multiple medical regimens to try and control her psychiatric symptoms. She has taken Zoloft, Paxil, Paxil CR, Effexor, Prozac, Celexa and now Prozac again. About one year ago, in the face of persistent and worsening symptoms which I felt were most consistent with bipolar disorder, I added Neurontin. The combination of Prozac, high doses of Neurontin, and antianxiety medicines such as Valium have provided a modicum of stability.

5. Throughout the course of our relationship Michelle has had frequent visits to my office emotionally overwrought. She is frequently overwhelmed by daily life events and has minimal coping skills. She was never able to resolve the death of her mother and every year on the anniversary of her death she will have a breakdown. Even knowing it is coming will not help her cope.

6. She is the product of a dysfunctional family. She has no support network of either family or friends.

7. Her two primary disabling features are her chronic back pain and agoraphobia. With respect to the back pain she is unable to perform even light work due to pain with prolonged sitting or pain with bending and extending. She has no significant marketable skills which would allow her to perform a job other than that of low skilled labor. The back pain is constant, unremitting and intractable. The agoraphobia is truly life limiting. She is only able to function in areas of extreme comfort. There are perhaps three or four locations outside of her home where she feels safe and can venture there freely. One location is my office, the second is her pharmacist, and the third is a single grocery store. Other than that she is overwhelmed and can not stay in that environment. This also makes it difficult for her to find and retain a job.

8. In summary, Michelle Collette is a 40 year old woman with a significant disability from back pain and psychiatric instability. She is unable to work outside of the home, has minimal coping skills and suffers from chronic pain.

[Tr. 332-33].

At the request of the ALJ [Tr. 359], plaintiff returned to Dr. Lawhon in July 2007 for additional mental status examination along with MMPI-II and Structured Interview of Reported Symptoms ("SIRS") testing. MMPI-II results were "invalid as evidenced by both the validity and clinical scales . . . ." [Tr. 336]. SIRS analysis showed "3 honest classifications, 3 indefinite classifications, 1 definite feigning classification and 1 probable feigning classification. The results [were] inconclusive for malingering." [Tr. 337].

10

Dr. Lawhon's narrative report predicted mild to moderate limitation in work adaptation, and moderate limitation in sustaining concentration and persistence. [Tr. 337]. However, an attached Medical Source Statement predicted no limitations whatsoever, other than the moderate concentration impairment cited in the narrative. [Tr. 339-40]. The narrative report bears what appears to be Dr. Lawhon's signature, whereas the Medical Source Statement bears illegible signatures. [Tr. 338, 341].

V.

*Expert Testimony*

Vocational expert Cathy Sanders ("VE") testified at plaintiff's administrative hearing. The VE classified plaintiff's past relevant jobs as light/semi-skilled, sedentary/semi-skilled, and light/unskilled. [Tr. 358]. The ALJ asked no further questions. [Tr. 359].

VI.

*Analysis*

Having considered the briefing in this appeal, it would appear that plaintiff challenges the ALJ's treatment of:

1. Dr. Platzer's Medical Statement;

2. Dr. Lawhon's opinions;

3. her alleged mental impairments;

4. her physical capabilities in light of Social Security Ruling 96-8p; and

5. Dr. Breeding's opinions.

11

The court will address these issues in turn.

## A. Dr. Platzer

Plaintiff argues that the ALJ erred in dismissing Dr. Platzer's assessment, as the opinion of a treating physician is generally entitled to great weight when supported by sufficient clinical findings consistent with the evidence. *See, e.g., Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). In the present case, the court concludes that the ALJ's rationale was well-explained and supported by substantial evidence as follows:

> . . . The opinion of the claimant's primary care physician, Dr. Peter B. Platzer, that the claimant's chronic back pain and agoraphobia are limiting and significantly reduce work the claimant can perform is not supported by his own clinical findings which reveal no significant restrictions other than some limited range of motion of the neck and back and only occasional depressed mood. Moreover, Dr. Platzer's opinion that the claimant has agoraphobia which is so limiting that it allows for comfort in only three to four locations is contradictory to his advice that the claimant seek involvement in the community. Thus, Dr. Plazter's opinion is rejected.

[Tr. 23].

In addition to the ALJ's observations, the court notes:

1. Dr. Platzer cites obsessive-compulsive disorder as one of many causes of plaintiff's disability, yet his records do not mention that condition after May 2003, two years prior to the period now at issue. [Tr. 197].

2. Dr. Platzer primarily cites mental health conditions, but he is not a mental health professional. *See* Tenn. Dep't of Health, Practitioner Profile Data, http://health.state.tn.us/licensure/Practitioner.ASP?prof=1606&licnum=29313 (last visited Dec. 18, 2008); 20 C.F.R. § 416.927(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

3. Dr. Platzer cites plaintiff's ovarian surgery as a cause of disability. However, soon after the surgery, the surgeon described her as "doing well." [Tr. 315]. *See* 20 C.F.R. § 416.927(d)(4) (less weight given to opinions that are inconsistent with the record as a whole).

4. Dr. Platzer cites being "the product of a dysfunctional family" as another apparent cause of disability. However, although plaintiff told Dr. Platzer in 2004 that her husband is verbally abusive and has threatened to leave her because she does not keep the house clean [Tr. 180-81], she told Dr. Lawhon that her childhood was "happy" and her marriage "satisfactory." [Tr. 281, 335].

5. In his opinion letter, Dr. Platzer alleged "frequent visits to my office emotionally overwrought." However, on May 6, 2005, when plaintiff presented in a "teary" and "upset" state with "continued pain" following the denial of her prior SSI claim, Dr. Platzer could only assess plaintiff as being a "[h]ealthy woman." [Tr. 165].

6. Dr. Platzer contends that plaintiff's "back pain is constant, unremitting and intractable." In the period relative to this appeal, however, he has described plaintiff as "doing well" [Tr. 170], "in no acute distress. . . . ambulatory with a steady gait and free of acute injury, patient is able to move all extremities with [full range of motion], and denies pain with movements" [Tr. 155], and - again most strikingly - as a "[h]ealthy woman." [Tr. 165].

7. Dr. Platzer cites "significant," "persistent and worsening," and "truly life limiting" mental health conditions, yet in the relevant time period he has described plaintiff as, "Normal affect and demeanor, alert and oriented x3" [Tr. 155], "actually fairly well composed. Eye contact is good. Mood is positive. Affect appropriate" [Tr. 152], "stable" [Tr. 148], and "[o]verall doing well" [Tr. 148].

8. Dr. Platzer opines that "severe scoliosis" and the placement of a Harrington rod are among plaintiff's "most significant" medical problems. The medical record confirms the placement of the rod but provides no further objective information regarding significant current thoracic problems. [Tr. 210, 212, 217-18]. Spinal imaging from 1999 showed only "mild" scoliosis "stabilized with metallic rods." [Tr. 141]. Lumbar imaging from 2003 and 2004, present in Dr. Platzer's file, contain only "mild" findings. [Tr. 212, 218].

13

9. As outlined above, Dr. Platzer claims concern over what he deems plaintiff's excessive consumption of hydrocodone [Tr. 172, 179], yet - incredibly - he has continued to provide hydrocodone prescriptions for **years** after his recognition of apparent prescription abuse.

A treating physician's opinions may be disregarded "when good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988). The ALJ did so in this case by pointing out that Dr. Platzer's statements are grossly out-of-step with the objective record. There is no error.

### B. Dr. Lawhon

Next, plaintiff argues that the ALJ inadequately explained his resolution of the conflict between the narrative and evaluation form completed by Dr. Lawhon in 2007. Plaintiff correctly observes a discrepancy in the signatures on the two records, which also reach somewhat different conclusions.

The court deems any alleged error to be harmless, as the ALJ's reasoning can be inferred from his overall discussion of plaintiff's mental condition. *See Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 465-66 (6th Cir. 2005). The ALJ cited: credibility issues; testing results suggestive of malingering; and the sporadic and episodic nature of plaintiff's emotional complaints. [Tr. 22-23]. Substantial evidence therefore supported the ALJ's ultimate conclusion that plaintiff does not suffer from any significant mental limitations. Any procedural error pertaining to Dr. Lawhon's evidence is accordingly deemed harmless on the facts of this particular case.

14

## C. Step Two

In a related argument, plaintiff alleges that the ALJ erred in not finding that she suffers from "severe" mental impairments at step two of the sequential analysis. As plaintiff correctly observes, the "severe" impairment threshold is a "*de minimis* hurdle" which is to be used only "as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988) (citation omitted).

Plaintiff's reliance on *Higgs* is misplaced. This is not a case in which a claimant has alleged only one impairment. In such cases, of course, an adverse determination at step two causes the entire application to be "screened out" as "totally groundless." By contrast, in the present case plaintiff alleges - and the ALJ recognized - multiple severe impairments. Accordingly, despite the finding that only some of the alleged impairments were "severe," plaintiff's claim survived step two. *See, e.g., Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The ALJ then went on to consider plaintiff's additional allegations in reaching his RFC conclusion that she can perform the full range of light work. The ALJ twice correctly noted that "disability" requires the existence of an impairment or impairments that have "lasted or can be expected to last for a continuous period of not less than 12 months." [Tr. 16-17]. The ALJ discussed plaintiff's alleged emotional limitations but dismissed them for the reasons discussed above (pertaining to Dr. Lawhon). The court finds no error.

15

D. Social Security Ruling 96-8p

Next, it is argued that the ALJ violated Social Security Ruling 96-8p, 1996 WL 374184, by not individually discussing plaintiff's ability to perform each of the functions of light work. However, "[a]lthough SSR 96-8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). Like the ALJ in *Delgado*, the present ALJ "discussed the medical and other evidence on the disputed issues and explained the basis for his determination of [plaintiff's] RFC." *Id.* at 548.

The ALJ cited Dr. Millis's RFC Assessment which predicted that plaintiff could perform the full range of light work. [Tr. 22]. The ALJ found Dr. Millis's opinion to be consistent with the minimal objective findings of record. The ALJ further gave "significant weight" to the lifting restrictions opined by Dr. Breeding but rejected the sit/stand and bending opinions of that source as being primarily based on plaintiff's dubious subjective complaints. [Tr. 22]. On the facts of this particular case, the ALJ's RFC findings were sufficient under SSR 96-8p. *See Delgado*, 30 F. App'x at 547.

E. Dr. Breeding

Lastly, plaintiff argues that the ALJ insufficiently explained his evaluation of consulting examiner Breeding's opinion. The court agrees but deems the error harmless.

16

The ALJ restricted plaintiff's RFC to no more than the full range of light work. He also gave "significant weight" to the exertional limitations predicted by Dr. Breeding. However, Dr. Breeding opined that plaintiff could "lift 15 pounds occasionally." That opinion is inconsistent with the full range of light work, *see, e.g., Jones v. Astrue*, No. 07-242-HRW, 2008 WL 89942, at *3 (E.D. Ky. Jan. 8, 2008); 20 C.F.R. § 416.967(b), and the ALJ did not sufficiently articulate why he found the lifting opinion of nonexamining Dr. Millis to be more credible than the opinion of examining Dr. Breeding.

Regardless, Ms. Sanders's VE testimony placed at least one of plaintiff's past relevant jobs at the lesser sedentary level. Dr. Breeding's lifting restriction is consistent with sedentary exertion. *See* 20 C.F.R. § 416.967(a). Therefore, even if Dr. Breeding's lifting opinion were fully adopted, the ALJ's ultimate conclusion would remain the same - that plaintiff remains able to perform past relevant work. Any error pertaining to Dr. Breeding is therefore harmless, as an administrative decision should not be reversed and remanded where doing so would be merely "an idle and useless formality." *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (citation omitted).

## F. Conclusion

The substantial evidence standard of review affords ALJs a "zone of choice." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Even assuming *arguendo* that a reasonable mind could have perhaps concluded differently on the ultimate issue of the present plaintiff's disability, that is not the standard of review binding this court. *See Casey*

17

*v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Excepting the harmless errors noted above, the decision of the Commissioner was supported by substantial evidence and must be affirmed. An order consistent with this opinion will be entered.

ENTER:

                                                s/ Leon Jordan
                                      United States District Judge